**STANDARD ENGINEERING CO. OF WASHINGTON, D. C., Inc. v. COMMUNITY HOTEL CORP.**

Civ. No. 1226.

United States District Court
S. D. West Virginia.

Feb. 1, 1952.

J. Campbell Palmer, III, Charleston, W. Va., for plaintiff.

John A. Field, Jr., Charleston, W. Va., for defendant.

MOORE, Chief Judge.

Plaintiff was contractor for the heating and plumbing work involved in the construction of an addition to the Daniel Boone Hotel in Charleston, West Virginia, owned by defendant. The contract contained a provision to the effect that defendant was not required to accept the work done by plaintiff until it was inspected and certified by the architect. However, there was a further provision in the contract to the effect that defendant had the right to take over and use any part of the work at any time.

On December 21, 1949, and before any inspection or certificate by the architect, or any formal acceptance of the work by

2. 33 U.S.C.A. § 933(b).

3. 33 U.S.C.A. § 919(c).

defendant, there was an explosion in the furnace which had been constructed by the plaintiff in the basement of the hotel. This furnace was a part of the heating system made necessary by the enlargement of the hotel. It supplied the heat for one boiler, there having already been two boilers which were used either alternately or together for furnishing steam to the heating system in the original hotel building. The explosion did substantial damage to the work which had already been completed. It also caused the death of two workmen, but we are not here concerned with that circumstance.

After the explosion it was agreed between plaintiff and defendant that plaintiff would do the necessary work of repairing the damage caused by the explosion, and that if it should afterwards be determined that the liability for the cost of the work was that of defendant, plaintiff would be paid on the basis of time and materials, plus 10%. Defendant reserved the right, however, to deny liability and contest plaintiff's claim for payment. This action is brought by plaintiff to recover under the aforesaid agreement.

The point of dispute with reference to liability is the question whether or not defendant, prior to the explosion, had taken over from plaintiff control, operation and use for its own purposes of the furnace and boiler. There is conflicting evidence on this point. I find the facts to be as follows: The burner which was installed in the furnace was of a make selected and specified by defendant. Plaintiff installed the burner in a good and workmanlike manner, and the work on both the furnace and the boiler was substantially complete in the spring of 1949. However, tests had not yet been run, and these tests were made in the summer of 1949. It was found that the burner did not operate satisfactorily. Therefore, about the middle of September, the diaphragm of the burner was removed by defendant's agent and sent in to the factory for inspection and repair, after which it was returned and properly reinstalled near the end of September.

On September 30 there was a football game in Charleston which crowded the hotel with guests. As a result of this situation plaintiff's agents were requested by the hotel management to start the furnace so that it could be used for the purpose of heating some of the rooms in the new part of the hotel. This was done. When plaintiff's local manager heard that the furnace had been put into use without formal acceptance, he ordered it shut down. It was shut down and remained so during the month of October. Plaintiff's manager several times requested officers of defendant to give a formal acceptance of the furnace, but this was refused for the reason, as W. B. Geary, defendant's president, testified, that defendant did not want to accept the work piece-meal, but to wait until there was a completed job. Early in November, for some reason which is not clearly shown, defendant's agent, Perry, who was the person having immediate supervision of the job, was again requested by defendant's building engineer to turn on the furnace for the use of the hotel. He did so, and from that time forward it was used by defendant as a part of its heating plant. No further tests were necessary, and none were made. The only operational defect prior to the explosion occurred when an electric wire was disconnected by some agent of defendant on a panel board in another part of the building, causing the burner to go out. This occurred on November 6. Plaintiff was called upon to repair the burner, but on discovery of the disconnected wire and the reconnection thereof, nothing further was found wrong with it. From that time on plaintiff's agents exercised no supervision or control over the furnace, which was taken over and used by defendant, although not formally accepted. This situation with reference to the furnace is shown not only by witnesses for the plaintiff, but also by the testimony of W. B. Geary, who, as a witness for defendant, and referring to the furnace, said: "We took over according to our contract; * * * We didn't accept it, * * * took it over and used it * * *. We were using it, as I said, under the plans

and specifications, after, I think, some time in November."

Since I find that for several weeks prior to the explosion defendant was in full control of the furnace, which it had taken over and was using as a part of its heating plant, I think the law is clear that defendant, and not plaintiff, must suffer the loss occasioned by an accident which was not due to any fault of plaintiff. There is no evidence and it is not contended by defendant that the explosion was due to any negligence on the part of plaintiff. Defendant has proceeded on the factual theory that it had not taken over the furnace for its own use at the time of the explosion, and on the legal theory that it would not be liable in any event until formal acceptance of the work. As already stated, I have resolved the factual conflict in favor of plaintiff, and I believe the legal theory to be a mistaken one. Indeed it was conceded by counsel for both sides at the hearing that liability depends not on whether a formal acceptance was given, but on whether control for its own use was assumed by defendant.

There is a small dispute with reference to the amount of the recovery. It was contended by counsel for plaintiff that plaintiff was entitled to the total amount of time and material, plus 10% for overhead, and a further 5% for profit. In the alternative he contended that plaintiff should be allowed as overhead expenses a total of $2,255, represented by a list of items which was filed. Both of these contentions are inconsistent with the agreement which was for time and material, plus 10%. However, there are two items listed by plaintiff as overhead expenses which are properly includable. One is the salary and expenses of a Mr. Erdman, plaintiff's project manager, who spent five days on the job. The other is telephone expense of $150. Plaintiff claims compensation at the rate of $100 per day for Erdman, but this figure is based on allowances made in court appearances as an expert witness. I believe that an allowance here of $50 per day for Erdman is ample.

Plaintiff is therefore entitled to recover according to the following calculations:

| Time and materials as claimed on original statement | $11,063.53 |
| --- | --- |
| Erdman at $50.00 per day | 250.00 |
| Telephone calls | 150.00 |
| Erdman expenses | 140.00 |
| | |
| Time and materials as allowed by Court | $11,603.53 |
| 10% of this amount | 1,160.35 |
| | |
| Total | $12,763.88 |
| 2% sales tax | 255.28 |
| | |
| Grand Total | $13,019.16 |

This sum will draw interest at the rate of 6% from June 1, 1950, that being the date of the acceptance of the completed repairs, until the date of the judgment.

An order may be entered in accordance with the foregoing opinion.